IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| TRICIA Y CLARK,  )<br>  )<br>   Plaintiff,  )<br>  )<br>    v.  )<br>  )<br>JUDICIAL ALTERNATIVES OF  )<br>GEORGIA, INC.,  )<br>  )<br>   Defendant.  )<br>  ) | CIVIL ACTION NO. 5:15-CV-171 (MTT) |

### ORDER

Defendant Judicial Alternatives of Georgia (JAG) has moved for summary judgment. Doc. 28. For the following reasons, the motion is **GRANTED**.

### I. BACKGROUND

Plaintiff Tricia Clark, a female, was employed as a probation officer for JAG, a private probation company, from on or about June 26, 2012 to January 14, 2014 in Milledgeville, Georgia. Docs. 1 at 1-2; 28-3 ¶ 7. In October 2013, she was promoted to Senior Probation Officer. Doc. 28-3 ¶ 9. As a part of her job, she worked closely with Dray Swicord, who was then Chief of the Milledgeville Police Department. Docs. 28-6 ¶¶ 3-4; 30-10 ¶ 6. In fact, Clark says she was promoted in part to soothe tensions between JAG and Swicord. Doc. 30-10 ¶ 4. According to Clark, on the day she was promoted, Kenneth Kight, JAG founder and Chief Financial Officer, told her that Swicord can be difficult and for Clark to let Kight know if she had any problems with Swicord. Doc. 30 at 2. On January 13, 2014, Clark called Swicord and left him a voicemail about a probationer he had released. Docs. 28-6 ¶ 5. When Swicord called Clark back,

tensions arose because Swicord felt Clark was questioning his judgment.  *Id.*  According to Swicord, Clark raised her voice towards him and was "unrelenting" leading him to abruptly end the phone call.  Docs. 28-3 ¶¶ 15-16; *see also* Doc. 28-6 ¶ 5.  Clark, however, persisted and again called Swicord, which did not assuage the tension between the two.  Doc. 28-6 ¶ 5.  After the second phone call ended, Clark called John Moss, her supervisor at JAG, and complained that Swicord was rude.  Doc. 28-5 at 50:25-51:2, 53:25-54:15.  Clark then spoke with Kight, who told her he would "take care of it."  *Id.* at 55:10-16.  Moss then called Swicord who told him "[Clark] had been rude and unprofessional [during their conversation]."  Doc. 28-6 ¶ 5.  Swicord then sent a text message to Kight to "advise him [of the] interaction."  *Id.*  In response, Kight called Swicord about the incident.  *Id.*  The next day, Kight met with Swicord to discuss the incident.  Doc. 28-3 ¶ 18.  Kight stated that, after meeting with Swicord and hearing his account of the conversation, he decided to fire Clark.  *Id.* ¶ 19.  That same day, Kight met with Clark and informed her she was being fired. Doc. 28-5 at 59:12-60:7.  In that meeting, Kight referenced the incident with Swicord, stating Clark was "too strong," and insinuated he had to fire Clark because his contract with the city was in jeopardy.  *Id.* at 62:7-24.  In her deposition, when asked if she believed she was fired because of her gender, Clark testified that she believed she was fired "based on the words [of] Dray Swicord."  Doc. 28-5 at 87:20-23.

On May 14, 2015, Clark filed suit against JAG alleging gender discrimination pursuant to Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e et seq.

## II. SUMMARY JUDGMENT STANDARD

A court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A factual dispute is not genuine unless, based on the evidence presented, "'a reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The movant may support its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

The burden then shifts to the non-moving party, who must rebut the movant's showing "by producing . . . relevant and *admissible* evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (emphasis added).  The non-moving party does not satisfy its burden "if the rebuttal evidence 'is merely colorable, or is not significantly probative' of a disputed fact." *Id.* (quoting *Anderson*, 477 U.S. at 249-50).  Further, where a party fails to address another party's assertion of fact as required by Rule 56(c), the Court may consider the fact undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2).  However, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . .  The evidence of the non-

movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

### III. *MCDONNELL DOUGLAS* FRAMEWORK

Without direct evidence of discrimination, as here, a plaintiff must prove her case with circumstantial evidence pursuant to the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *McCann v. Tillman*, 526 F.3d 1370, 1373 (11th Cir. 2008). First, a plaintiff must establish a prima facie case of discrimination, the test for which differs slightly depending on the nature of the claim. *Id*. at 802. If a plaintiff does so, the burden of production, but not the burden of persuasion, shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment action. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981).

The plaintiff then has the opportunity to show that the employer's stated reason is in fact pretext for discrimination. *See McDonnell Douglas*, 411 U.S. at 804. The critical issue "is whether the plaintiff has 'create[d] a triable issue concerning the employer's discriminatory intent.'" *Flowers*, 803 F.3d at 1336 (alteration in original) (quoting *Smith v. Lockheed–Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011)). "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000); *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 517 (1993) ("[P]roving the employer's reason false becomes part of (and often considerably assists) the greater enterprise of proving that the real reason was intentional discrimination.").

## A.   Prima Facie Case

There is no dispute that Clark is (1) in a protected class based on her gender; (2) was qualified for the position she held; and (3) was subjected to an adverse employment action.  *See Crisman v. Fla. Atl. Univ. Bd. of Trustees*, 659 F. App'x 472, 578 (11th Cir. 2016) (quoting *Rice–Lamar v. City of Ft. Lauderdale*, 232 F.3d 836, 842–43 (11th Cir. 2000)) (listing the elements of a prima facie case of gender discrimination). However, to prove a prima facie case, Clark must also prove that her employer treated a similarly situated male employee differently *or* that she was replaced by a male employee.  *See Crisman*, 659 F. App'x at 578; *Maynard v. Bd. of Regents of Div. of Univs. of Florida Dep't of Educ. ex rel. Univ. of S. Florida*, 342 F.3d 1281, 1289 (11th Cir. 2003).  Clark attempts to make both of these showings.

In his affidavit, Kight states that a female employee was promoted to take Clark's position.  Doc. 28-3 ¶ 20.  In response, Clark avers that she was replaced by a male employee whom she claims to have met while visiting JAG's office two years after she was fired.  Doc. 30-10 ¶ 20.  Other than this bare assertion, Clark offers nothing to support this claim.  For example, Clark does not allege that the employee, or anyone else with JAG, told her that he was hired to replace her.

Clark also claims she was treated less favorably than a similarly situated male employee, Zachary McCullers, who acted unprofessionally when he "rolled his eyes towards [a state solicitor] during a court hearing" on July 8, 2013.  Docs. 28-3 ¶ 21; 28-5 at 80:4-9.  Clark alleges that, in response, JAG initially did nothing, but over six months later, on the same day she was fired, Kight told McCullers he could either resign or be transferred.  Docs. 30 at 1-2; 28-5 at 78:17-80:2, 85:21-86:4.  Although Kight disputes

McCullers was given an option to resign or transfer because of the incident, JAG does not dispute Clark's assertion that McCullers acted unprofessionally and, unlike Clark, was not fired as a result.[1]   Doc. 28-3 ¶ 23.

JAG, however, argues the incident involving McCullers "is distinguishable from" that involving Clark and that, therefore, he was not similarly situated.  Doc. 32 at 3.  An employee is similarly situated if "that employee was 'involved in or accused of the same or similar conduct' and disciplined in a different manner . . . .  '[T]he quantity and quality of the comparator's misconduct [must] be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges.'" *Escarra v. Regions Bank*, 353 F. App'x 401, 404 (11th Cir. 2009) (quoting *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999)).  The Court finds it difficult to conclude that the actions of McCullers and Clark, which both involved allegedly unprofessional interactions with city officials, are distinguishable based on the evidence.  Certainly, being verbally unprofessional towards a police chief could be considered a more serious offense than rolling one's eyes towards a state solicitor.  However, McCullers acted unprofessionally during an official court proceeding, which, arguably, makes his offense more serious.  Accordingly, the Court assumes Clark and McCullers were sufficiently similarly situated to establish a prima facie case.

**B.   Legitimate Nondiscriminatory Reason**

In response to Clark's prima facie case, JAG bears the burden to produce a legitimate nondiscriminatory reason why Clark was terminated.  The reason must be

---

[1] In February 2014, McCullers notified JAG he was leaving for another job and was fired soon thereafter. Doc. 28-5 at 84:18-85:14.  Clark alleges McCullers was fired for providing a statement to her for purposes of this lawsuit.  *Id.*  Regardless, it is undisputed he was not fired due to his unprofessional conduct in the courtroom.

"one that might motivate a reasonable employer." *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000). The City "need not persuade the court that it was actually motivated by the proffered reasons" but must produce evidence sufficient to "raise[] a genuine issue of fact as to whether it discriminated against [Clark]." *Kragor v. Takeda Pharm. Am., Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012) (quotation marks and citation omitted). Here, JAG has met this burden. JAG states Clark was fired because of the "verbal altercation with Dray Swicord" and "Swicord's report that she spoke to him in a rude, unprofessional manner" causing him offense. Doc. 28-2 at 2; 9-10; *see also* Doc. 28-3 ¶ 19. Certainly, this is a reason that would motivate a reasonable employer. *See Chapman*, 229 F.3d at 1023.

**C.    Pretext**

Because JAG has met its burden of production, Clark must rebut JAG's legitimate nondiscriminatory reason for firing her as pretext for discrimination. *Flowers*, 803 F.3d at 1336. Clark can show JAG's reasons are pretext "either directly by persuading the court that a discriminatory reason more likely motivated [JAG] or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Kragor*, 702 F.3d at 1308 (quoting *Burdine*, 450 U.S. at 256). However, it is not enough to merely contradict the employer's nondiscriminatory reason. *Flowers*, 803 F.3d at 1339. The plaintiff must also present evidence of discrimination so that a "rational factfinder could conclude that the [employer's] action was discriminatory." *Id.* "[A] reason cannot . . . be 'a pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr.*, 509 U.S. at 515 (emphasis in original).

Here, Clark must rebut JAG's reliance on her allegedly unprofessional conversation with Swicord. Kight decided to fire Clark after speaking with Swicord about the incident. Doc. 28-3 ¶ 19. Swicord informed Kight that he felt the conversation was unprofessional. Doc. 28-6 ¶ 5. In firing Clark, Kight relied on Swicord's version of the conversation and "felt that [he] had no choice but to terminate Clark's employment" in light of "Swicord's report." Doc. 28-3 ¶ 19. Far from rebutting this assertion, when asked in her deposition if she believed she was fired because of her gender, Clark testified that she believed she was fired "based on the words [of] Dray Swicord." Doc. 28-5 at 87:20-23. The thrust of her argument is that she was not unprofessional toward Swicord, who essentially is a client and a difficult client at that, and that Kight improperly believed Swicord over her for "political" reasons. Docs. 28-5 at 55:17-19, 61:5-65:25; 30-10 ¶ 17 (claiming that Kight told her that she was terminated because she was "too strong, politics was involved and [the] contract was at stake"). And, accordingly, she argues the decision to fire her was improper. Doc. 30 at 2. She may be right—maybe Kight should have believed Clark instead of JAG's client, but "it is not the [C]ourt's role to second-guess the wisdom of an employer's decisions as long as the decisions are not" motivated by gender. *Alexander v. Fulton Cty.*, 204 F.3d 1303, 1341 (11th Cir. 2000), *overruled on other grounds by Manders v. Lee*, 338 F.3d 1304 (11th Cir. 2003); *see also Flowers*, 803 F.3d at 1338 ("Title VII does not allow federal courts to second-guess nondiscriminatory business judgments, nor does it replace employers' notions about fair dealing in the workplace with that of judges.").

Clark also argues that JAG's reliance on her unprofessional conduct as its reason for firing her was pretext because the separation notice from JAG states she

was fired for violating a portion of the employee handbook that was not in force when she was hired in 2012.  Doc. 30 at 1.  But the acknowledgement form accompanying the employee handbook, which Clark signed when she was hired, states "revisions may supersede . . . existing policies."  Doc. 28-5 at 159; 30-4 at 12.  So, Clark was arguably subject to any changes to the handbook.  Moreover, neither Clark nor JAG have produced admissible evidence as to the contents of the employee handbook that was in force when Clark was fired.[2]  But Clark admits she was aware that employees were required to act professionally.  (Doc. 28-5 at 32:29-33:3).  Regardless, JAG clearly fired Clark based on Swicord's assessment of his interaction with Clark and not the employee handbook.

    Clark, therefore, has not proven JAG's legitimate non-discriminatory reason to be "unworthy of credence."  See *Kragor*, 702 F.3d at 1308 (quoting *Burdine*, 450 U.S. at 256).  Clark has also failed to prove JAG was more likely motivated by a discriminatory intent than its stated reasons as she has not provided any evidence that she was fired because of her gender.  Thus, Clark has not proven JAG's legitimate nondiscriminatory reason is pretext for discrimination.  Based on the record, a rational trier of fact could not conclude that Clark was terminated because of her gender.  Accordingly, Clark's claim cannot survive summary judgment.

---

[2] Both parties seem to miss the point on the employee handbook.  Clark submits a copy of the handbook that was in force when she was hired, although JAG disputes it as inadmissible.  Docs. 30-6; 32 at 6-7.  JAG, meanwhile, submits a current version of the employee handbook that was updated on June 27, 2016—more than two years after Clark was fired.  Doc. 28-5 at 127-161.  Therefore, neither party submits the handbook actually in force when Clark was fired.

Case 5:15-cv-00171-MTT   Document 33   Filed 03/31/17   Page 10 of 10
- 10 -

## IV. **CONCLUSION**

For the foregoing reasons, JAG's motion for summary judgment (Doc. 28) is **GRANTED**.

**SO ORDERED**, this 31st day of March, 2017.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT
